May it please the court. Good morning, your honors. My name is Devin Fuchs and I represent the appellant. Excuse me. Sure. Could someone close the door, please? Thank you. I'm sorry. That's fine. Please proceed. Thank you, your honor. I know it's on me, but I would like to try to reserve two minutes of time. Your honor, this court must remand this matter for sentencing because the district court made the exact same mistake that this court warned about in United States v. Farrell. Specifically, it did not apply the objectively reasonable person standard, which led the court to rely on insufficient evidence to enhance Mr. Hall's sentence pursuant to United States sentencing guideline 2B 3.1 B2E. Mr. Hall pled guilty to robbery. On the day in question, the video, which is included as part of the record, very clearly shows Mr. Hall, a thin man, walk into the bank with his turn to be called. The front of his body is clear on the video. There is no outline of a weapon. There is no bulge, which would indicate that there was an object present. From all accounts, Mr. Hall looked like any other customer waiting in line. When his turn at the teller came, the teller called him forward. Mr. Hall can be seen fidgeting a lot. Before or after he said keep calm, give me the money and no one gets hurt. He can be seen fidgeting both. He can be seen fidgeting prior to that when he is looking at his phone. And then when he actually gets to the teller, you can see him kind of going back and forth like this. The note comes out. There is the moment where he lifts his pants or looks at his phone or does whatever. And the teller begins to get the money. Well, that does whatever is kind of important. I'm sorry? The does whatever is kind of important because we don't know. I mean, you can't tell from the video. He definitely does reach down. But there's it's definitely not clear to me that he's pulling up his pants or he's reaching for his phone. We don't really know. But that certainly could support the teller's statement that he reached down and and the teller said he saw a handgun. But the point being, he certainly did reach down and we don't can't see from the video what he was doing. You're right. And he very clearly does reach down. And your your honor's reading is the same as the judge's reading in the case. And the judge specifically held the district court judge specifically held that it wasn't dispositive or clear what he did. And that's why Maxwell tells us that we have to look at the entire context of the incident and the totality of the circumstances when determining whether or not the the enhancement should apply. So when we talk about the kind of this was an armed robbery conviction. Bank robbery. Armed bank robbery conviction. Correct. OK. And so we're now at enhancement. And you're saying I object to the enhancement. That's correct. And at that point, what did the government put on? The government offered no evidence at sentencing. Yes. Yes. The government. That's where we are in this case. We're beyond conviction. We're at sentencing. That's right. And the video, the government submitted, I believe, the photograph that your honor has. And that was in the brief as well. But other than that, and that's part of the problem. We'd kind of talk about the sufficiency of the evidence. The evidence that the court relied on came from the precinct report writer, which came from the teller called at the sentencing to provide testimony. No. To support the enhancement. No. Not only was the teller not called, but the FBI agent who spoke to the teller was not called either. Did you request or did the defense attorney request an evidentiary hearing on that issue? At the beginning of the hearing, I informed the judge that we had a witness. We considered calling Mr. Hall if the judge felt like he needed more information. That issue was came back to towards the end of the hearing. The judge said he felt that he had enough information at that time and proceeded to make his ruling. But he had your objection. He had your objection to this enhancement. And your objection was basically prove that he had a gun. That's correct. And part of that objection. But you weren't going to put any evidence on to that issue. We were prepared to. But you didn't do it. I didn't. I should have. I didn't. But the judge also determined that he had enough information as it was. Well, but what did that mean? I have enough information. Well, I think if you don't say anything about my client didn't have a gun and the judge says, well, I've got enough information. I've got a guilty plea. I've got an eyewitness. I've got an FBI agent's statement. He says that in his own mind. I've got enough information. It's up to the defense to say, wait a minute, we want an evidentiary hearing on this issue. You have that right. And nobody ever takes him up on it. You're right, Your Honor. And hindsight is always 20 20. But let me say this. It's the government's burden to prove that an enhancement applies. The government did not provide any evidence. Instead, the court relied on the pre-sentence report. The pre-sentence report. Well, but if nobody objects, it's perfectly proper for the government to rely on or the court to I understand. But did you object? I thought you did object to the PSR. We object. We objected to the enhancement. Yes, correct. Yes, we did. I'm sorry. I misunderstood your honor's question. That was after the fact that that was when he announced what he was going to do. No, we objected. The objection to the PSR was in the sentencing memorandum. We objected to the enhanced to the application of the enhancement in the sentencing memorandum and then at the argument as well. But when we talk about the pre-sentence report, this is part of the problem. We talk about the sufficiency of the evidence. The pre-sentence report also indicates that Mr. Hart or excuse me, Mr. Hall indicated that he didn't have a gun. So the fact that no evidence was taken in this case is the fact that the government more importantly, didn't put any evidence is is more problematic. And it becomes even more problematic when we talk about the sufficiency. And I wanted to circle back around to the In in the government's brief, they provided a picture of what they believe to be the key moment in the instance. And that was I have to commend them. That was a good idea. And I often do that myself with the pictures in the brief. But that picture is the exact opposite of what Maxwell instructs his court that they need to do. In that picture, you're looking at literally the smallest possible moment. And Maxwell and Farrow tell us that you're supposed to look at the entirety of the context and the totality of the circumstances. And that photograph is actually the exact opposite. So when we talk about the sufficiency of the evidence and also specifically, I should say, the court made two rulings or two findings that are particularly important. One, that the defendant did not brandish or possess an actual weapon and that the video is not dispositive or clear. But the court agreed that the teller's perception of a gun along with the video and the note was sufficient for the enhancement application for the application of the enhancement. The problem therein is that the court and when we talk about the sufficiency of the evidence, this is important. The court never applied that objective standard to whether or not the teller reasonably believed that that gentleman, Mr. Hall, had a firearm. He relied only on the teller's own perception, which can be considered as part of it. But when we talk about whether or not there was an object, there has to be that, that analysis has to be put forth. Well, the government, or I'm sorry, the district court specifically said it was relying on the video and it said it was when combined with other evidence, including the victim's statement. So I don't know how you get out of that, that it was looking strictly subjectively  Well, he said he was considering the teller's statement, correct? Including the victim's statement, yes, but that's including. And including the victim's statement is what he said. I mean, that's not saying I'm relying solely on the teller's perception, subjective perceptions, which is what you're suggesting. I think it is. I mean, he's relying on the totality of the circumstances, but when it comes to whether or not there was an actual object. Okay. Well, the video would show that he used, potentially used, he had, we know from the video he had a phone and he tucked it away somewhere. We also know he could have used his hand, honestly, as the object, or he could have used the phone as an object. The comment note, the note that we're relying on here basically says that he used the object that was, the idea is he creates the impression that the object is capable of inflicting death or serious bottle injury. Couldn't that even just be he used his hand as the object, or he used his cell phone as the object, starts to pull it out and indicates it's, you know, it might be a gun, or the teller, you know, gives the impression it might be a gun. And the teller here said he saw a gun, and the judge said that the judge relied on the teller's statement as well as the video. So, I mean, I think there's various objects here that could have been used. A hand, a cell phone, or a gun. To answer your question, yes, there could be an, it's appropriate to consider whether or not there's an object, but what is the object in this case? There does have to be an object. It can be, it could be a hand. It could be whatever. But in this case, what the judge said was that it was clear that there was not an actual weapon, which means to me that there was not an object. And the language there is important. The judge didn't say it's clear to me that there wasn't a firearm. That was in connection with the judge saying that what doesn't apply, my understanding was what doesn't apply here is 2B31, which is the enhancement for when an individual actually brandishes or possesses a firearm. And the government concedes here there's no, we don't have proof of a firearm. The government wasn't saying there was no firearm, just that we don't have proof, so we can't rely on the five-level enhancement. Sure. That five-level enhancement wasn't discussed during the hearing at all. I didn't necessarily take it that way, although I understand Your Honor's point. But that still leaves us with the question of what is the object? And when he says there was no weapon, no actual weapon, I take that to mean that there was no object. And if we think about it, there's kind of a void there from the defense perspective. Yeah, I think we're left with the impression of the teller and the statement that the teller gave, which is reported in the PSR. But when you have an objection, it seems, I think the burden goes back to the government to say, well, here's our basis for this enhancement. We're calling the teller. We're putting the teller on the stand to say what he said, you know, to, you know, tell the judge, give testimony. I think you're absolutely right, Your Honor. I think that burden is on the government to put that teller on the stand. Because it could have been a lot of things. It could have been a hand. It could have been, I mean, we don't see anything in this video. That's the problem. And the teller, when his statement was recorded in the PSR, is very specific about what he saw. Right. And what's interesting about that, though, and what was kind of, I had an almost difficult time wrapping my head around is that he is very specific. Yeah. I saw a black semi-automatic handgun, right? And then the judge turns around and says, it's clear, or the judge says. He says it is undisputed that the defendant did not brandish or possess an actual weapon. I don't know that that was really an accurate statement, because I don't think the government ever said we don't dispute that or we concede that he didn't have a weapon. They just conceded they didn't have proof of the weapon. That may be, but it's. They never recovered a weapon later when he was arrested. Right. But it's interesting, though, because the judge, there's that specific statement by the teller of a specific description. And then the judge turns around and says that specifically is not did not happen. And so when you cut that out or when you consider that its value is tremendously diminished. And when we talk about the totality of the circumstances, you're left with a note and a video, which the judge also said was not dispositive nor clear. So when we talk about the sufficiency of the evidence in this case or the totality of the circumstances and the context, the context, you're left with a record that is wanting to that has much less than is needed to support that enhancement. And particularly when you when you look at some of the other cases like Abbott or Sanders or Davis or Hoffa or even even Farrow, there is when we talk about that context, when even when an individual does use their hand, there's that lingering. There is sometimes emotion that goes along with it. Give me the money. Something like that. Or there's the box where the individual says, give me the money. I have a bomb and there's a box there. In this case, we don't have that same kind of evidence that there was an actual object. And unless Your Honor, Your Honors have any other questions, I'd like to reserve the rest of my time. Thank you. Thank you very much. Morning, Your Honors. My name is George Crahey. I'm an assistant United States attorney and I represent the appellee in this case. Your Honor, there was more than sufficient evidence to support the district court's finding supporting its application of the enhancement under United States sentencing guidelines, Section 2B 3.1B2E. That's the enhancement that allows a three level increase if it is found that the defendant created the impression that he had a dangerous weapon. Now, that impression was created in the teller, right? Your Honor, the court based its findings on the facts that were set forth in the pre-sentence investigation report. These facts, the court expressly adopted. The court also adopted or applied this, made this finding based on the video and still photographs that were provided by the defense in this case. So it was the teller's impression. When we're talking about the impression, the answer is yes, it was the teller's impression that he had a gun. Your Honor, I would disagree. It's the impression that the defendant created as evidenced by the totality of the circumstances. Created in whom? The impression was created for, I guess, as applied to the teller. The defendant created the impression so that the teller would believe that. So the PSR said that the teller had the impression that the defendant had a gun and then the defendant objects to that fact, conclusion, impression. Correct, Your Honor. Then who has the burden after there's an objection to a fact in a PSR? Well, then, Your Honor, the government would have the burden to establish that there are facts. And in this case, the government relied on the videotape, on the still photographs. It also relied on the evidence that the findings that were articulated in the pre-sentence investigation report. And as stated, the court considered all of this evidence and the totality of the circumstances in finding that the defendant did, in fact, create the impression that he had a dangerous weapon. And he explained it. He explained his findings. He stated, first of all, that the teller made a statement to police, that he saw the defendant approach the counter, that the defendant presented him with a note that said, stay calm, give me your money, and nobody gets hurt, and that the defendant looked down towards his waist, lifted his shirt, and then pulled what appeared to be a black pistol partially from his waist. And the court also relied on a video that showed part of what the teller had told the police. But showed no object or using his hand to simulate a weapon. Your Honor, the video was below or was above the waist level, wasn't it? Your Honor, the video is coming kind of from behind the teller, so you can see the movements that the defendant is making. But you can't see directly into what the defendant had on or had. Correct, Your Honor. You can't see his waist, but you can see him pulling up the shirt and you can see him looking down. And that corroborates what the victim teller told the police. What can you see as far as what you have to show, which is that he used an object to create that appearance? Your Honor, the defendant's statement is sufficient for that purpose, combined with also the video, which corroborates the statement and shows the movement, the gesture towards the waist. What about the court's statement? The court's statement that it's undisputed the defendant didn't brandish or possess an actual weapon. Your Honor, that was conceded by the government because we had no evidence that what the teller saw was an actual weapon. Is it clear from the context, though, of the court's statement that that was that's. I mean, the court said it's undisputed the defendant did not brandish or possess an actual weapon. And you're I mean, but now you're saying that we should rely on the fact that the victim said there was a weapon. Well, what the victim said he saw was a black pistol. Now, that could be an actual weapon. It could be a fake weapon. It could be a BB gun. It could be a cell phone that the defendant thought looked like a weapon or that the victim thought looked like a weapon. We don't know actually what it was that he was holding. It would have been great to call him, wouldn't it? Yes, Your Honor. But we can rely on out of court statements. It was perfectly permissible for the court to rely on when there's when there's an objection that squarely puts the fact in question. That is, was there or was there not a weapon? Yes, Your Honor. The court was permitted to rely on the out of court statement. In the case of the United States v. Ruby, this court held that out of court statements are sufficient for purposes for purposes of finding facts in a sentencing hearing after an objection. I can't say after an objection to a fact in the PSR, the burden goes back to you, does it not? Yes, Your Honor. And we did also rely on the corroborating evidence that was presented by the video. I thought the objection was to the three level enhancement. Correct, Your Honor. It was not to the fact that I object that the TELUS statement is not admissible. Correct, Your Honor. There was no specific objection to any of the facts set forth in the PSR. The court expressly adopted all the findings in the PSR. The only objection was stated in the sentencing memorandum, and that objection was as to the application of the enhancement under the facts, presumably, as presented. I don't want to speak for the defendant here, but it sounds like he had a slightly different version of what he was doing as other evidence suggested. But that's the role of the district court, is to review all the evidence that's presented to it, and then make factual findings. You're not required to find that there was a gun. You're only required to find that the defendant did something in a manner that created the impression that the object was an instrument capable of inflicting death. Absolutely, Your Honor. The government had a fairly low burden from an evidentiary standpoint to establish application of this enhancement. And that burden was simply that the defendant created the impression that he had a dangerous weapon. And under the totality of the circumstances, him coming into the bank, even acting in a nervous manner is a part of the totality of the circumstances. Handing the teller a note that made a threat, nobody gets hurt. And then making a gesture towards his waist, pulling up his shirt, and looking down, right after handing the teller that note. Those facts alone have been held to be sufficient to establish application of the enhancement. So you don't have to show that he used an object, an object, as the comment note says? No, Your Honor. That's just helpful? The hand is an object. I mean, the guideline... Application notes say specifically, well, it says the guideline enhancement may apply if the defendant, quote, unquote, created the impression that an object was an instrument capable of inflicting death or serious bodily injury, e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun. And in that case, the hand is sufficient. Is that what you argued here then? That is what we argued, Your Honor. The hand was sufficient? Yes, Your Honor. That's what we argued. Is that the hand was sufficient? And the video shows the motion with the hand towards his waist. And we cited a number of cases to the court, and also in our briefing, that support the proposition that those kinds of gestures, those kinds of motions, under the totality of the circumstances, following a threat, threatening remark. All of your cases, though, refer to a hand wrapped in a towel, and the hand is held to sort of look like a gun, shape like a gun, or a bulge in a pocket looks like a gun. I mean, we're looking at something that is physical and that can be seen. We don't have that here because, as we've all said painfully now, the video does not show anything below this defendant's waist. Your Honor, it shows him reaching towards his waist and pulling up his shirt. Right. So where is the use of the hand to make it look like a gun or to say, I've got a gun in my pocket and the victim can see that there is some kind of impression that looks like or could be a gun? Your Honor, we don't have that here. And those are the kinds of cases that you're citing. Well, we do have that here, Your Honor, because he says, give me the money and nobody gets hurt. And then he looks down towards his waist and pulls up a shirt and places his hand down there. And and those are very similar to the facts that were in Farrow, where the defendant held his hand inside a pocket. Wasn't it also similar to United States versus Abbott? It is very similar to that case, Your Honor, as well. It is also similar to the facts. Well, Abbott is almost on all fours. The defendant kept his hand at his waistband, partially obscured by the jacket, and the teller reported that he appeared to have an object with a black handle. That's correct, Your Honor. And there were a number of other cases from other circuits that we cited. There was United States versus Stillman, where the bank robbery defendant told the bank teller that he had a gun, concealed his hand in his pocket, pointed to his hip, where the teller observed a bulge. There was United States versus Davis. The defendant told bank teller, just give me the money, while placing hand in a backpack as though he were going to pull something out. United States versus Hoffa, from the Third Circuit, defendant told the bank teller, if I pull it out, I'll use it, while holding his hand in his pocket. United States versus Hart, where defendant carried package wrapped in brown paper bag. That's a little different, I guess. But there are numerous cases where just having your hand in a certain position, in a pocket, in your coat, reaching towards a backpack, that alone has been... A bulge, or another object, or a box, we don't have any of those things here. Your Honor, we have... We have a movement toward the waistband. Yes, Your Honor. And there are cases where that has been held to be sufficient to support the enhancement. But we have more than that in this case anyway. We do have the statement of the teller saying that he saw what he thought was a pistol. And that statement was relied on by the court. And it was appropriate. It was perfectly proper for the court to rely on that statement in adopting the findings that the court did adopt in applying this enhancement. So, Your Honor, the court applied the enhancement, it applied it correctly, it applied it using an objective standard after considering the totality of the circumstances. The court reviewed the video, the note, and all the evidence in coming to its conclusions. And we believe that it was a correct finding. There was no clear error in the court's finding. And under the case law, there is no clear error whether you believe that there was sufficient evidence to support a finding that he had an actual object or not. There is sufficient evidence under any variation that we've discussed that would support this finding and application of the enhancement. The defendant clearly created the impression. There is evidence that the defendant clearly created the impression that he had a dangerous weapon. And for those reasons, Your Honor, we ask that you uphold the district court's judgment. Thank you. Your Honor, the cases that opposing counsel referred to are not helpful in this case. Abbott is not helpful. Bates is not helpful. Sanders is not helpful. Why isn't Abbott helpful? That's almost exactly the case we have here. Guy had a loose shirt on. He kept his hand in his waistband. The teller reported it appeared to be a gun. What more do you want? Your Honor said it. He kept his hand at his waistband. He kept it there. And that's what created that impression. But that's not what we have here, especially when you watch the entire video. My time's almost up. I just wanted to say one other thing. And the concern that the court and Farrell had, and I think it's very important here, is, and I'm going to quote from Farrell, certain boundaries must be drawn to ensure that innocent conduct is not punished due solely to the potentially unreasonable perceptions of particular victims. And that is at the heart of the case. And that's why the analysis that the district court unfortunately did not conduct in this case bears so heavily. And it is the reason why this court must remand this matter to the district court for re-sentencing. Thank you. Thank you.